Michael R. Morano
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff,
Westchester Fire Insurance Company

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>v.<br><br>OMEGA SERVICE MAINTENANCE CORPORATION; JHJ ENTERPRISE, LLC; TAYLOR MECHANICAL CORPORATION; ROBERT STAPLETON; JORGE E. TAYLOR; CAROL TAYLOR; JORGE B. TAYLOR,<br><br>            Defendants. | Civil Action No.:<br><br><br>**COMPLAINT** |

Plaintiff, Westchester Fire Insurance Company, by and through its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, as and for its complaint against Defendants, Omega Service Maintenance Corp., JHJ Enterprise, LLC, Taylor Mechanical Corp., Robert Stapleton, Jorge E. Taylor, Carol Taylor, and Jorge B. Taylor alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial portion of the events giving rise to the claim occurred in the District of New Jersey and Defendants are subject to personal jurisdiction in this District.

## PARTIES

3.    Westchester Fire Insurance Company ("Westchester") is a company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

4.    Upon information and belief, Omega Service Maintenance Corp. ("Omega") is a corporation organized and existing under the laws of the State of New York, and has its principal place of business at 11 Evergreen Avenue, Neptune City, New Jersey 07753.

5.    Upon information and belief, JHJ Enterprise, LLC ("JHJ") is a limited liability company organized and existing under the laws of the State of New Jersey, and has its principal place of business at 11 Evergreen Avenue, Neptune City, New Jersey 07753.

6.    Upon information and belief, Taylor Mechanical Corp. ("TMC") is a limited liability company organized and existing under the laws of the State of New York, and has its principal place of business at 601 Bangs Avenue, Suite 506E, Asbury Park, New Jersey 07712.

7.    Upon information and belief, Robert Stapleton is an individual residing at Route 23-A-11177, Lexington, New York 12452.

8.    Upon information and belief, Jorge E. Taylor is an individual residing at 75 Nancy Lane, Staten Island, NY 10307.

9.    Upon information and belief, Carol Taylor is an individual residing at 75 Nancy Lane, Staten Island, NY 10307.

10.     Upon information and belief, Jorge B. Taylor is an individual residing at 7 Old Cider Mill Road, Manalapan, New Jersey 07726.

## GENERAL ALLEGATIONS

### I.     The Indemnity Agreement

11.     Omega, JHJ, and TMC were at all relevant times engaged in the construction contracting business in connection with certain construction projects.

12.     In connection with certain of their construction contracts, Omega, JHJ, and TMC were required to provide construction surety bonds.

13.     On or about May 1, 2006, in consideration for and in order to induce Westchester, as surety, to issue surety bonds on behalf of Omega, JHJ and TMC, as principals,  Omega, JHJ, TMC, Robert Stapleton, Jorge E. Taylor, Carol Taylor, and Jorge B. Taylor, (collectively, the "Indemnitors"), executed and delivered an Agreement of Indemnity (the "Indemnity Agreement") in favor of Westchester, as indemnitee.

14.     A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit 1**.

15.     Pursuant to the Third Paragraph of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to:

> . . . hold harmless, indemnify[,] and keep indemnified [Westchester] from and against any and all claims, demands, and liability for losses, costs and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which [Westchester] may sustain or incur by reason of or in consequence of the:
>
> A.  Execution or procurement of the execution of [Bonds];

B.  Failure by [the Indemnitors] to perform or comply with any of the covenants or conditions of this agreement.

C. Any event of [d]efault herein;

D. Enforcement of any covenant of this [agreement];

E. Performance of any investigation, attempt or attainment of any release in connection with any [Bonds];

F. Prosecution or defense of any action or claim in connection with any [Bonds], whether [Westchester], at its own discretion, elects to employ counsel of its own selection or permits or requires [the Indemnitors] to make arrangements for [Westchester]'s legal representation; and

G. Attempt to recover losses or expenses paid or incurred in connection with this [agreement], [contract] and/or Bonds.

Ex. 1, Third Paragraph.

16.     By letter dated May 2, 2014, WFIC declared the Indemnitors in default of their joint and several obligations under the Indemnity Agreement (the "Default Letter").  A true and accurate copy of the Default Letter, together with the exhibits to the Default Letter, is attached hereto as **Exhibit 2**.

17.     Pursuant to the Fourth Paragraph of the Indemnity Agreement, the Indemnitors agreed to:

. . . deposit with [Westchester], immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to [Westchester] for liability or loss. [Westchester] shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which [the Indemnitors] would be obligated to indemnify [Westchester] under the terms of [the agreement].

Ex. 1, Fourth Paragraph.

18.     Pursuant to the Eighth Paragraph of the Indemnity Agreement, the Indemnitors agreed to assign, transfer and convey to Westchester, among other things, "all monies due or to

become due to" Omega, JHJ or TMC, and, without limitation, "all rights of [Omega, JHJ or TMC], in or arising in any manner out of" all contracts bonded by Westchester, or bonds issued by Westchester.  Ex. 1, Eighth Paragraph.

19.    Pursuant to the Fifteenth Paragraph of the Indemnity Agreement, the Indemnitors jointly and severally agreed to:

> . . . furnish [Westchester] such information as it may request from time to time concerning the financial condition of [the Indemnitors], the status of work under any [contracts], and or the payment of obligations in connection therewith.

Ex. 1, Fifteenth Paragraph.

20.    The Sixteenth Paragraph of the Indemnity Agreement further provides that the Indemnitors, jointly and severally, agreed that:

> At any time during [the agreement] and until such time as the liability of [Westchester] under all Bonds is terminated and [Westchester] is fully reimbursed all amounts due under [the agreement Westchester] shall have the right to access books, records, accounts, documents, computer software, and other computer stored information of [the Indemnitors], wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm, or corporation, when requested by [Westchester], is hereby authorized and required to furnish [Westchester] any and all information requested[.]

Ex. 1, Sixteenth Paragraph.

## II.    Bonds Issued on behalf of Omega Service Maintenance Corp.

### A.    The NYC DEP Contract, the NYC DEP Project and the NYC DEP Bond

21.    Omega entered into a contract with the City of New York (the "City"), whereby Omega agreed to perform construction and construction related services (the "NYC DEP Contract"), on a project known as "New York South Region HVAC" (the "NYC DEP Project").

22.     Following the Indmemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K08219503 (collectively, the "NYC DEP Bond"), on behalf of Omega, as principal, in favor of the City, as obligee, in connection with the NYC DEP Contract and the NYC DEP Project.

23.     Among other claims against bonds issued on behalf of Omega, the following is a list of claims, and, to date, known payables of Omega, in connection with the NYC DEP Bond and the NYC DEP Contract:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
|---|---|
| Excelsior Blower | $61,396.00 |
| Trane | $73,045.28 |
| American Industrial | $9,000.00 |
| URS Corp. | $15,200.00 |
| Platinum Electric | $20,686.90 |
| Sound Environmental Associates, LLC | $4,500.00 |
| TOTAL: | $183,828.18 |

24.     In addition, by letter from the NYC DEP to Omega dated August 11, 2014, the NYC DEP stated, among other things, that "Omega is in default of its obligation under the [NYC DEP] Contract" (the "DEP/Omega Default Letter").   A true and accurate copy of the DEP/Omega Default Letter is attached hereto as **Exhibit 3**.

25.     By letter from the NYC DEP to Westchester dated August 11, 2014, the NYC DEP, among other things, made "formal demand . . . that Westchester [ ] perform its obligations under [the NYC DEP Bond] and complete the Work . . . pursuant to the [NYC DEP] Contract" (the "DEP Performance Bond Demand Letter").   A true and accurate copy of the DEP Performance Bond Demand Letter is attached hereto as **Exhibit 4**.

B.      **The DASNY Contract, the DASNY Project and the DASNY Bond**

26.     Omega entered into a contract with the Dormitory Authority of New York ("DASNY"), whereby Omega agreed to perform construction and construction related services (the "DASNY Contract"), on a project known as "DASNY Asbestos Abatement" (the "DASNY Project").

27.     Following the Indemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K08219539 (collectively, the "DASNY Bond"), on behalf of Omega, as principal, in favor of the City, as obligee, in connection with the DASNY Contract and the DASNY Project.

28.     Among other claims against bonds issued on behalf of Omega, the following is a list of claims, and, to date, known payables of Omega, in connection with the DASNY Bond and the DASNY Contract:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
|---|---|
| Dan Yant Inc. | $31,580.00 |
| Honeywell | $31,661.00 |
| **TOTAL:** | **$63,241.00** |

C.      **The Byrne Contract, the Byrne Project and the Byrne Bond**

29.     Omega entered into a contract with the United States of America General Services Administration (the "Byrne Obligee"), whereby Omega agreed to perform construction and construction related services (the "Byrne Contract") on a project known as the "James Byrne Courthouse" (the "Byrne Project").

30.     Following the Indemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K0821976A

(collectively, the "Byrne Bond"), on behalf of Omega, as principal, in favor of the Byrne Obligee, as obligee, in connection with the Byrne Contract and the Byrne Project.

31.     Among other claims against bonds issued on behalf of Omega, the following is a list of claims, and, to date, known payables of Omega, in connection with the Byrne Bond and the Byrne Contract:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
|---|---|
| CW Electrical | $500.00 |
| **TOTAL:** | **$500.00** |

**D.     The Wildlife Contract, the Wildlife Project and the Wildlife Bond**

32.     Omega entered into a contract with the United States of America Fish and Wildlife Service (the "Wildlife Obligee"), whereby Omega agreed to perform construction and construction related services (the "Wildlife Contract") on a project known as the "Great Swamp National Wildlife Refuge" (the "Wildlife Project").

33.     Following the Indemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K08219722 (collectively, the "Wildlife Bond"), on behalf of Omega, as principal, in favor of the Wildlife Refuge Project Obligee, as obligee, in connection with the Wildlife Refuge Contract and the Wildlife Refuge Project.

34.     Among other claims against bonds issued on behalf of Omega, the following is a list of claims, and, to date, known payables of Omega, in connection with the Wildlife Contract and the Wildlife Bond:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
| --- | --- |
| Liebert | $18,754.16 |
| **TOTAL:** | **$18,754.16** |

**E.     The Dan Yant Lien, the Lien Discharge Bond and the Lien Bond Action**

35.     Following the Indemnitors' execution of the Indemnity Agreement, Dan Yant, Inc., filed a Mechanic's Lien, for the sum of $46,319.86, in the offices of the NYC DEP and the New York City Department of Finance, against monies due or to become due Omega, pursuant to, among other things, Omega's alleged failure to make payment due Dan Yant, Inc, on the project commonly referred to as the Owl's Head project (the "Dan Yant Lien").

36.      In connection with the Dan Yant Lien, Westchester, as surety, issued a Lien Discharge Bond, bearing bond number K08219710, on behalf of Omega, as principal (the "Lien Discharge Bond"), in the sum of $50,951.85.

37.     Upon information and belief, the Dan Yant Lien and claim by Dan Yant, Inc., against the Lien Discharge Bond, is the subject of litigation pending in the  Supreme Court of the State of New York, Kings County, captioned *Dan Yant, Inc. v. Omega Service Maintenance Corp., et al.*, Index No. 23803/2011 (the "Lien Bond Action").

**F.     Loss, Expense and Exposure under the Omega Bonds**

38.     As a result of its issuance of bonds on behalf of Omega, including the NYC DEP Bond, the DASNY Bond, the Byrne Bond, the Wildlife Bond, the Lien Discharge Bond, and bonds bearing bond numbers K08219333, K08219369, K08219370, K08219357, K08219436, K08219497, K08219540, K08219576, K08219746 and K08219758 (collectively, the "Omega

Bonds"), Westchester has incurred, and will continue to incur, losses, costs and/or expenses, including attorneys' fees, in connection with the investigation, defense, and, if required, satisfaction of claims against the Omega Bonds.

**III.     Bonds Issued on behalf of JHJ Enterprises, LLC**

    **A.     The East Orange VA Contract, the East Orange VA Project and the East Orange VA Bond**

39.     JHJ entered into a contract with the United States Department of Veterans Affairs (the "East Orange VA Obligee"), whereby JHJ agreed to perform construction and construction related services (the "East Orange VA Contract"), on a project known as "East Orange Campus Upgrade" (the "East Orange VA Project").

40.     Following the Indemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K08219515 (collectively, the "East Orange VA Bond"), on behalf of JHJ, as principal, in favor of the East Orange VA Obligee, as obligee, in connection with the East Orange VA Contract and the East Orange VA Project.

41.     Among other claims against bonds issued on behalf of JHJ, the following is a list of claims, and, to date, known payables of Omega, in connection with the East Orange VA Contract and the East Orange VA Bond:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
|---|---|
| Geo-Tech | $23,520.00 |
| Signal Electric | $28,460.00 |
| USC Environmental | $18,750.00 |
| Integrated Building | $29,135.00 |
| Scientific Water | $9,983.33 |
| **TOTAL:** | **$109,848.33** |

**B.     The St. Albans Contract, the St. Albans Project and the St. Albans Bond**

42.     JHJ entered into a contract with the United States of America Department of Veterans Affairs (the "St. Albans Obligee"), whereby JHJ agreed to perform construction and construction related services (the "St. Albans Contract"), on a project known as "St. Albans Upgrade" (the "St. Albans Project").

43.     Following the Indemnitors' execution of the Indemnity Agreement, Westchester, as surety, issued a performance bond and a payment bond, both bearing bond no. K08219552 (collectively, the "St. Albans Bond"), on behalf of JHJ, as principal, in favor of the St. Albans Obligee, as obligee, in connection with the St. Albans Project.

44.     Among other claims against bonds issued on behalf of JHJ, the following is a list of claims, and, to date, known payables of Omega, in connection with the St. Albans Contract and the St. Albans Bond:

| Name of Claimant/Creditor | Amount Allegedly Due Claimant/Creditor |
|---|---|
| Trane U.S. Inc. | $31,832.00 |
| Integrated Systems & Power | $8,400.00 |
| T.M. Bier | $45,999.00 |
| **TOTAL:** | **$86,231.00** |

45.     Upon information and belief, Trane U.S. Inc.'s claim against the St. Albans Bond is the subject of litigation pending in the United States District Court for the Eastern District of New York, captioned *United States of America for the use of Trane U.S. Inc., v. JHJ Enterprises, LLC, et al.*, Docket No. 1:13-cv-02689 (NGG)(RER).

**C.     Loss, Expense and Exposure under the JHJ Bonds**

46.     As a result of its issuance of the East Orange Campus Bond, the St. Albans Bond and bonds bearing bond numbers K0821945A, K08219461, K08219473 and K08219564, (collectively, the "JHJ Bonds"), Westchester has incurred, and will continue to incur, losses,

costs, and/or expenses, including attorneys' fees, in connection with the investigation, defense, and, if required, satisfaction of claims against the JHJ Bonds.

**IV.**   **Bonds Issued by Westchester on behalf of JHJ, Omega and TMC**

47.   The Omega Bonds, the JHJ Bonds, and bonds issued by Westchester, as surety, on behalf of TMC, as principal, bearing bond number K08219382 and K08219485, shall be collectively referred to as the "Bonds."

## FIRST COUNT

### CONTRACTUAL INDEMNIFICATION
### AS TO THE INDEMNITORS

48.   Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

49.   Pursuant to the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to "hold harmless, indemnify[,] and keep indemnified [Westchester] from and against any and all claims, demands, and liability for losses, costs and expenses of whatsoever kind or nature, including but not limited to . . . counsel fees, . . . together with interest thereon . . . which [Westchester] may sustain or incur by reason of or in consequence of," among other things, "[e]xecution or procurement of [the Bonds]." Ex. 1, Third Paragraph.

50.   Westchester has demanded that the Indemnitors honor their obligations under the Indemnity Agreement to, among other things, indemnify and hold Westchester harmless for any and all liability, loss, demand fees and costs incurred in connection with the Bonds.

51.   Despite demand, the Indemnitors have failed to honor their obligations under the Indemnity Agreement to, among other things, indemnify and reimburse Westchester for the

losses, costs, and/or expenses it incurred as a result of having issued the Bonds, and have otherwise breached the Indemnity Agreement.

52.     As a result of the Indemnitors' breach of the Indemnity Agreement, Westchester has incurred, and will continue to incur, substantial unreimbursed losses, costs, and/or expenses in connection with the investigation, defense and/or satisfaction of claims and potential claims against the Bonds, and prosecuting this action.

**WHEREFORE**, Westchester respectfully demands judgment against the Indemnitors, jointly and severally, as follows:

(a)     for contractual indemnification for all losses, costs, and expenses, including attorneys' fees, incurred, and to be incurred, in an amount in excess of $75,000.00, as a result of its having executed the Bonds, together with appropriate interest thereon;

(b)     for an order, declaring the Indemnitors jointly and severally liable to Westchester for all loss, liability, cost or expense to which Westchester may be exposed or which it may sustain as a result of its having executed the Bonds;

(c)     for an order, assigning, transferring and conveying, all monies, rights, title and interest of the Indemnitors, in accordance with the terms of the Indemnity Agreement;

(d)     for an order, compelling each Indemnitor to perform its obligations to Westchester under the Indemnity Agreement and the Bonds; and

(e)     for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

## SECOND COUNT

### COMMON LAW INDEMNIFICATION
### AS TO OMEGA, JHJ AND TMC

53.     Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

54.     As between Westchester and Omega, JHJ, and TMC, Westchester is secondarily obligated under the Bonds, while Omega, JHJ and TMC are primarily obligated under the Bonds, and otherwise owe a duty to Westchester to procure the discharge of all obligations arising under the Bonds.

55.     Westchester has sustained damages by reason of Omega, JHJ and/or TMC's failure to honor their common law obligations arising under the Bonds.

**WHEREFORE**, Westchester respectfully demands judgment against Omega, JHJ, and TMC as follows:

(a)     for damages in an amount sufficient to indemnify Westchester from any and all liability, cost and expense incurred as a result of its having executed the Bonds, together with appropriate interest thereon;

(b)     for an order, declaring Omega, JHJ, and TMC liable to Westchester for any and all liability, loss, cost, expense, and attorneys' fees incurred or to be incurred by Westchester as a result of its having executed the Bonds; and

(c)     for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

### THIRD COUNT

**SPECIFIC PERFORMANCE OF RIGHT TO INSPECT BOOKS AND
RECORDS OF THE INDEMNITORS**

56.     Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

57.     Pursuant to Paragraph 16 of Indemnity Agreement, the Indemnitors agreed that:

> At any time during [the agreement] and until such time as the liability of [Westchester] under all Bonds is terminated and [Westchester] is fully reimbursed all amounts due under [the agreement Westchester] shall have the right to access books, records, accounts, documents, computer software, and other computer stored information of [the Indemnitors], wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm, or corporation, when requested by [Westchester], is hereby authorized and required to furnish [Westchester] any and all information requested[.]

58.     Despite demand, the Indemnitors have failed to honor their obligations under the Indemnity Agreement to provide Westchester with full, complete and immediate access to all of the Indemnitors' books, records and other documents.

59.     Without full, complete and immediate access to all of the Indemnitors' books, records and other documents, Westchester may be harmed.

60.     By reason of the foregoing, Westchester has suffered and will continue to suffer, injury and damage for which there is no adequate remedy at law.

**WHEREFORE**, Westchester respectfully requests judgment against the Indemnitors, jointly and severally, as follows:

(a)      for specific performance of the Indemnity Agreement, by ordering and directing the Indemnitors to immediately provide to Westchester full and complete access to all of the Indemnitors' books, records, and other documents for inspection and copying;

(b)      for an order requiring the Indemnitors to render to Westchester a full and complete accounting of all assets owned by them and in which they have an interest; and

(c)      for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

### FOURTH COUNT

#### EXONERATION
#### AS TO OMEGA, JHJ AND TMC

61.      Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

62.      As between Westchester and Omega, JHJ, and TMC, Westchester is secondarily obligated under the Bonds, while Omega, JHJ, and TMC are primarily obligated under the Bonds, and otherwise owe a duty to Westchester to procure the discharge of all obligations arising under the Bonds.

63.      Omega, JHJ, and TMC have failed and refused, and continue to fail and refuse to satisfy the obligations to Westchester arising under the Bonds.

64.      Westchester is entitled to be exonerated and indemnified by Omega, JHJ, and TMC for any and all losses incurred under the Bonds.

65.      As a result of Omega, JHJ, and TMC's failure to honor their obligations arising under the Bonds, Westchester has sustained and will continue to sustain damages.

**WHEREFORE**, Westchester respectfully demands judgment against Omega, JHJ, and TMC as follows:

(a)     for an order, compelling Omega, JHJ, and TMC to indemnify and exonerate Westchester against and from any and all liability or loss arising from the Bonds;

(b)     for an order, declaring Omega, JHJ, and TMC liable to Westchester for any and all liability, loss, cost, expense, or attorneys' fees incurred or to be incurred by Westchester as a result of its having executed the Bonds;

(c)     for an order compelling Omega, JHJ, and TMC to perform their obligations under the New York Contract, DASNY Contract, the Byrne Courthouse Contract, Wildlife Refuge Contract, the East Orange Campus Contract, the St. Albans Contract, and the Bonds; and

(d)     for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

## FIFTH COUNT

### QUIA TIMET
### AS TO OMEGA, JHJ AND TMC

66.     Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

67.     Westchester anticipates that it may be required to make payments to various claimants to cure the defaults of Omega, JHJ, and TMC under the Bond and the Indemnity Agreements.  The continued failure of Omega, JHJ and TMC to place funds with Westchester results in Westchester's continuous and increasing risk of loss under the Bonds.

68.     Westchester also fears that unless the relief sought is granted, Omega, JHJ, and TMC may liquidate and otherwise dissipate their assets thereby ensuring that funds that ought to

be applied to satisfy Westchester's obligations under the Bonds and Omega, JHJ, and TMC's obligations under the Indemnity Agreement will not be available at the conclusion of this litigation.

**WHEREFORE**, Westchester demands judgment against Omega, JHJ, and TMC, jointly and severally, as follows:

(a)    ordering and directing Omega, JHJ, and TMC to discharge any claims asserted against Westchester and to reimburse Westchester for any outlays which it may have had to make in connection therewith;

(b)    ordering and directing Omega, JHJ, and TMC, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, immediately to deposit collateral in an amount in excess of $75,000.00;

(c)    directing, ordering, and adjudging that, pursuant to the common law doctrine of *quia timet*, Omega, JHJ, and TMC and their agents are restrained and enjoined from transferring, encumbering or otherwise disposing of and from concealing and secreting any of their property and assets, real, personal and mixed, whether jointly or solely owned, which might serve as collateral so as to secure Westchester from liability herein until proof of record satisfactory to the court is presented to establish that all claims to which Westchester is exposed have been liquidated and discharged;

(d)    requiring Omega, JHJ, and TMC to render to Westchester a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

18

(e)      requiring Omega, JHJ, and TMC to allow Westchester full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest;

(f)      awarding in favor of Westchester, and against Omega, JHJ, and TMC, damages in the amount of all expenditures, and outlays made by Westchester, including attorneys' fees, consultant's fees, litigation expenses, interest and court costs; and

(g)      awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## SIXTH COUNT

**SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT BY COMPELLING THE INDEMNITORS TO, AMONG OTHER THINGS, DIRECT THE OBLIGEES TO REMIT CONTRACT BALANCES AND PROCEEDS TO WESTCHESTER**

69.      Westchester repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

70.      Under the terms of the Indemnity Agreement, the Indemnitors agreed to, among other things, assign, transfer and convey to Westchester, among other assets and things, all monies due or to become due Omega, JHJ and/or TMC pursuant to the contracts bonded by Westchester.

71.      By reason of the foregoing breach of their bonded obligations and the Indemnity Agreement, the Indemnitors are required to, among other things, direct the obligees on all projects bonded by Westchester to remit any and all future payments of contract funds to Westchester.

**WHEREFORE**, Westchester demands judgment against the Indemnitors, jointly and severally, for specific performance as follows:

(a)     Ordering and directing the Indemnitors to execute a letter of direction or other applicable document to the obligees on all projects bonded by Westchester, which directs the payment of all proceeds and contract balances due to the Indemnitors, in whole or in part, to Westchester (see Ex. 1, Eight Paragraph, Sub-Paragraph A);

(b)     Ordering and directing the Indemnitors to assign, transfer and convey all of the rights of Omega, JHJ and TMC in, or arising in any manner out of, all contracts bonded by Westchester (see Ex. 1, Eight Paragraph, Sub-Paragraph B);

(c)     Ordering and directing the Indemnitors to assign, transfer and convey to Westchester all of Omega, JHJ and TMC's rights, title and interest in and to all machinery, equipment, plant, tools and material which relate to contracts bonded by Westchester or the Bonds (see Ex. 1, Eight Paragraph, Sub-Paragraph C);

(d)     Ordering and directing the Indemnitors to assign, transfer and convey all of Omega, JHJ and TMC's rights, title and interest in and to any actions, causes of action, claims demands or proceeds of such actions, causes of action, claims or demands in connection with, among other things, contracts bonded by Westchester (see Ex. 1, Eight Paragraph, Sub-Paragraph E);

(e)     Requiring the Indemnitors to render to Westchester a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest (see, e.g., Ex. 1, Eight Paragraph, Sub-Paragraphs A through H);

(f)      Awarding Westchester such other and further relief as provided for in the Indemnity Agreement, and/or the Court deems appropriate just, equitable and proper;

(g)      For attorneys' fees, costs of suit, interest, and any other relief that the Court deems just and proper.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
Attorneys for Plaintiff,
Westchester Fire Insurance Company

Dated: October 16, 2014                          By: *s/ Michael R. Morano*
                                                      Michael R. Morano
                                                      1300 Mt. Kemble Avenue
                                                      P.O. Box 2075
                                                      Morristown, New Jersey 07962